RUSSELL v. NATIONAL EXHIBITION CO.

(Supreme Court, Appellate Division, First Department. April 4, 1901.)

1. CONTRACTS—BASEBALL PLAYER—SUSPENSION—PHYSICAL CONDITION—ACTION FOR SALARY—DEFENSE.
   Defendant engaged plaintiff to play baseball, the contract authorizing discharge without pay for a definite period for lack of sound physical condition, and required plaintiff to keep himself in the best physical condition to play ball during the playing season, and provided that, if he failed to do so, defendant, on reasonable notice, might deduct from the amount due or to become due a proportional part of plaintiff's consideration while his disability continued. The parties also executed a subsidiary contract, under which plaintiff was to receive a bonus of $600 if he played to the best of his ability. Defendant suspended plaintiff, for lack of physical condition, during the continuance of the disability. Held, in an action for plaintiff's salary, that a charge that a discussion of plaintiff's condition was not necessary, because plaintiff was entitled either to a cancellation of his contract or to suspension for a definite period, was erroneous, as eliminating a proper defense, since plaintiff's physical condition was an essential element of the contract.

2. VERDICT—AMOUNT—CONTRACT—CONSTRUCTION—REVIEW.
   Where the verdict included a sum for which defendant was not liable, and there was also error in the construction of a contract between the parties, the appellate court will not demand a remittitur of the sum improperly allowed, and render judgment for the balance, but will reverse the case.

3. SAME—NOTICE.
   Defendant engaged plaintiff to play baseball, and the contract provided that defendant should have the right to suspend plaintiff for a definite period without pay in case of plaintiff's failure to keep himself in sound physical condition, and that plaintiff should be given notice of such suspension. Held, that a notice that plaintiff was suspended without pay until he was in a fit condition to play according to his contract constituted a suspension for a definite period, within the meaning of the contract, since it was as definite as the cause assigned for suspension would permit.

Appeal from trial term, New York county.

Action by Frank Russell against the National Exhibition Company. From a judgment in favor of plaintiff, defendant appeals. Reversed.

The action was brought to recover a balance alleged to be due under a contract which the plaintiff's assignor, N. F. Pfeffer, entered into on October 19, 1894, to play for the defendant in the New York Baseball Club between April 1 and September 30, 1896. Two causes of action are alleged, based on separate written agreements,—one providing that $2,400 was payable in equal semimonthly installments beginning April 15, 1896, of which amount. $360 was received, leaving $440 unpaid on June 1, 1896, when Pfeffer terminated the contract by joining the Chicago Baseball Club; and the other naming the sum of $600 similarly payable, of which $90 was received, leaving, as claimed, $410 due and unpaid. The defendant alleges that nothing is. payable under either instrument, for the reason that Pfeffer did not keep. himself in good physical condition, and in consequence was suspended on April 28, 1896; and, further, that there was no consideration for the second agreement. At the trial both agreements were put in evidence, and the first stipulates, among other conditions, that the defendant "shall have the right * * * to discipline, suspend without pay (for a definite period), or to expel" its players, and that these powers "shall include the right to discipline, suspend without pay (for a definite period), or expel players for carelessness or indifference, lack of sound physical condition, or such other conduct, condition, or circumstance impairing their faithful and thorough performance of duties," of all of which the defendant was the exclusive judge; that the player "expressly agrees at all reasonable times during the term of his employment as aforesaid to subject himself to such rules and discipline, to keep himself in the best physical condition to play ball at home and elsewhere during the playing season"; that "it is understood and agreed that, should the ability of the 'player' to perform his duties be impaired, or should he become ill from natural causes at any time during the term herein prescribed," the defendant might "deduct from the amount then due or to become due under this contract such proportion of the consideration money herein prescribed as the period of his disability or impairment may bear to the time prescribed"; and that, if the player violated any of the conditions or covenants on his part in the contract, the defendant had "the right to terminate this contract on reasonable notice, and no further payments shall thereafter be due." The second agreement is as follows: "In consideration of a gift of six hundred ($600) dollars, to be paid in twelve semimonthly payments during the season of 1896, beginning April 1, 1896, during the continuance. of my services with the New York Baseball Club, I do hereby agree to play to the very best of my ability in appreciation of this present besides other considerations in my contract." Pfeffer, by deposition taken on commission in Chicago, testified that he was to receive from the defendant $3,000, but' was sent the $2,400 contract and the side contract of $600, both of which he signed and returned; and plaintiff's counsel stated that it was against the. rules to contract for more than $2,400. He further testified that, although in good physical condition, he received no pay after April 28, 1896, having been suspended at that time by the following notice:

"New York Baseball Club, 39 & 41 Cortlandt St.

"New York, April 28, 1896.

"Mr. Fred Pfeffer—Dear Sir: I am obliged to lay you off without pay until' you are in fit condition to play ball according to your contract.

"Arthur A. Irwin, Mgr."

It was admitted that no other notice than this was given before May 22,. 1896, about which time Pfeffer was told that he was released, and then entered into negotiations which led to his employment by the Chicago Baseball Club on June 1, 1896. Referring to the second agreement, the court said: "He certainly cannot recover in this action, or should not be allowed to recover any 'part of that present, if it was a present, which accrued after he left the club and took service with another." In this view the plaintiff's counsel acquiesced. And concerning the notice of suspension the court stated: "The defendant here has limited itself, as to suspension, to the right to suspend without pay for a definite period. * * * Consequently it was an attempted suspension, that was void. * * * It is not necessary to go into. all this discussion as to Mr. Pfeffer's condition, because, as I read the con-

tract, if he had been a hopeless paralytic, he would either have been entitled to a cancellation of the contract or suspension for a definite period, and not for the period when he might recover." The defendant having excepted, the court continued: "If you will agree upon the amount due until he signed with the Chicago Club, I will direct a verdict for that amount." The defendant's counsel then said: "We except to the ruling of the court that the pay is to run until the 1st of June. Our claim is that it should run only until the time when the man severed his connection with the New York Club by accepting an oral discharge and by hiring to another. Under the ruling of the court we agree that down to June 1, 1896, there would be due $685, including interest." A verdict was then directed in plaintiff's favor for $685, and it is from the judgment so entered that the defendant appeals.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

De Lancey Nicol, for appellant.
John M. Ward, for respondent.

O'BRIEN, J. Contracts should be fairly construed, and, in considering the words used, that meaning should be given which, if possible, will avoid an inequitable conclusion. Upon the trial the defendant sought to establish its defense that Pfeffer had violated his agreement in that he did not keep himself in good physical condition, and was not physically able to play to the very best of his ability; but all evidence directed to maintaining this defense was rendered of no avail by the ruling of the learned trial judge that it was entirely immaterial, for the reason that, if Pfeffer "had been a hopeless paralytic, he would either have been entitled to a cancellation of the contract or suspension for a definite period, and not for the period when he might recover." As the result of the construction thus given to the contract, the defense was eliminated, and the defendant was prevented from showing—as, for the purposes of this appeal, we must hold that the testimony would have done—that Pfeffer's condition was such that he was not only unable to play to the best of his ability, but that he was physically unable to play at all. In several places in the contract, by different language, and in express terms, the intent is clearly shown to have the good physical condition of Pfeffer made an essential and important part of the agreement; and the rights of the defendant to suspend or expel him for a failure to be and continue in good physical condition, or to deduct such proportion of his salary "as the period of his disability or impairment may bear to the time prescribed," are carefully guarded. Assuming, as we must, therefore, that the defendant could show that Pfeffer was physically unfit to play, it would, it seems to us, be an unjust conclusion to reach that, because of some defect in the form of notice, all the rights which the defendant acquired under the contract were lost. Certainly, under the subsidiary contract, if the defendant could show that Pfeffer was not able to "play to the very best of his ability," it would be a hardship to compel the defendant to pay the stipulated amount; and yet by the verdict as directed the sum was allowed the plaintiff which Pfeffer would have been entitled to receive only upon showing a performance of the subsidiary contract on his part,—which was not shown. The inclusion of this amount without proof that Pfeffer was not entitled to it would necessarily result in a reversal

of this judgment, or at least in a modification. This constitutes but a small part of the recovery, and we might, were it not for our view as to the proper construction to be given the principal contract, avoid the necessity of a new trial by requiring the plaintiff to stipulate to deduct that amount from the judgment. We think, however, that error was committed in not permitting the defendant to introduce evidence in support of its general defense of the physical infirmity of Pfeffer, for the reason that under one clause of the contract, to which we have referred, the defendant was entitled to a deduction for the period of such infirmity, and this regardless of notice, since in that clause there was no requirement of notice. It is insisted, however,—and this was the precise ground upon which the judge at trial term based his direction of a verdict,—that it is evident that the defendant attempted to exercise its right under the fourth clause of the contract, which required the giving of a notice of suspension "for a definite period," which, according to the construction given to these words by the learned trial judge, should have been a notice of suspension for a period of days, weeks, or months. As we have pointed out, this obligation of notice is not contained in the clause which gives the defendant the right to deduct a proportionate amount of salary during the period of disability, as to which period he was not allowed to give proof by the ruling made, so that he was deprived of the rights which he had under that clause.

Upon the question, also, as to the sufficiency of the notice, we think that the court was in error. The fourth clause of the contract gives the defendant authority to frame rules for the government of the players, and "to discipline, suspend without pay (for a definite period), or expel" them for a number of causes, specified among which is the lack of sound physical condition. In instances where, for causes such as dishonest play, or open insubordination, or indifference, or acts impairing their faithful and thorough performance of duties, it was proposed to punish or discipline the player by taking away his pay "for a definite period," then, unquestionably, from the nature of the offense, it was within the power and it was the right of the player to receive a notice of suspension for a period fixed by days or weeks and months, for that alone would be a "definite period." Where, however, the defendant sought to avail himself of the right to suspend for the lack of sound physical condition, from the nature of the cause it is impracticable to fix upon any period measured solely by time, for this might be an injunctive both to the defendant and to the player. The object of the notice was to apprise the player, as fair dealing required, of the defendant's intention to avail itself of the rights given it by the contract, and we think the appellant's contention should be sustained that "this right to suspend the player just as long as he remains out of condition certainly makes it reasonable to suppose that the defendant might notify the player of such an intention, and thus effectuate the right. Right and remedy should correspond. Such a notice is, within the meaning of the contract, a notice of suspension 'for a definite period.' The limitation is carefully prescribed. Just as soon as the player gets back into condition, the suspension is at an end." If any other construction be given

to these words as applied to suspension for lack of physical condition, then clearly it might result in injustice to the player or to the defendant. Where the player is physically unfit to perform his duties, it is necessarily impossible to determine when such disability may cease; and, if the definite period prescribed would require its being fixed by a period of time, then, in order to protect itself, the defendant might fix the time so long that it would do injustice to the player, who meanwhile might get back into condition. What the defendant was contracting for was efficient work, and the clear intent expressed by the contract was that it was not to pay for the period during which the player was unfit to efficiently perform his duties. The suggestion that under this construction advantage might be taken of the player to tie his hands, and thus prevent his earning the money, is without force in view of the fact that such a result could not be accomplished except through bad faith, which would not succeed, for, as shown by the trial of this action, to justify the withholding of the player's salary, it is incumbent upon the defendant to show that by reason of physical incapacity he was not entitled to be paid. What undoubtedly was intended by this fourth clause of the contract was that the notice should be as definite as, from the nature of the cause assigned for suspension, could be made. That is all we think the player had a right to receive, and this, under the notice served, Pfeffer obtained. Whether or not this construction, which is a reasonable one, shall eventually prevail, we think that under the clause giving defendant the right to make a deduction for the period of disability, and under the terms of the subsidiary contract requiring the plaintiff to show that the player was entitled to the additional money promised upon condition that he should play to the very best of his ability, the defendant, in support of the defenses, should have been allowed to introduce its evidence. As stated, these defenses were eliminated by the ruling made, and for this error there must be a reversal of the judgment, and a new trial, with costs to appellant to abide the event. All concur.